# COMPOSITE EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"), dated August 2, 2021 (the "Effective Date"), is entered into by and among the following parties (each a "Party" and collectively, the "Parties"): (a) Plaintiff MasTec Renewables Puerto Rico, LLC ("MasTec"), Plaintiff in the action styled *MasTec Renewables Puerto Rico, LLC v. Mammoth Energy Services, Inc., et al.*, No. 1:20-cv-20263 (S.D. Fla.) (the "Action"); (b) MasTec, Inc.; (c) Defendant Cobra Acquisitions, LLC ("Cobra"); and (d) Mammoth Energy Services, Inc. ("Mammoth").

This Agreement states all of the terms of the Parties' agreement, which is intended by the Parties to fully, finally, and forever compromise, settle, resolve, and dismiss with prejudice the Action and any disputes that may exist between or among the Parties.

## RECITALS

WHEREAS, MasTec commenced this Action against Cobra and Mammoth on January 21, 2020;

WHEREAS, the Parties have engaged in good faith, arm's length settlement negotiations in an effort to resolve any and all remaining disputes between them, resulting in the settlement that is set forth in this Settlement Agreement;

WHEREAS, without conceding the merits of any claim or argument asserted by either Party, the Parties have negotiated and entered into this Agreement in order to avoid the risk, delay, and substantial expense that would arise from litigation of the Action to final resolution;

WHEREAS, to avoid any further expenditure of time, effort, money, and the inconvenience and inherent risk the Parties incur in prosecuting and defending the Action, the Parties desire fully and finally to compromise, settle, and resolve the Action and provide releases upon the terms and conditions set forth herein (the "Settlement").

## **AGREEMENT**

NOW, THEREFORE, the Parties hereby agree as follows:

1.      **Settlement Consideration**.  As consideration for the full and complete releases described in Paragraphs 9 and 10, for dismissal of the Action with prejudice, and for the execution and delivery of this Settlement Agreement, Cobra shall pay to MasTec the total sum of $25,000,000.00 (25 million dollars and zero cents).  Payment shall be made in three installments. The first installment shall be $6,500,000.00 (six-million, five-hundred thousand dollars and zero cents) (the "First Installment"); the second installment shall be $9,250,000.00 (nine-million, two-hundred fifty-thousand dollars and zero cents) (the "Second Installment"); and the third installment shall be $9,250,000.00 (nine-million, two-hundred fifty-thousand dollars and zero cents) (the "Third Installment").  The First, Second, and Third Installments constitute the total "Settlement Payment."

2.      **Payment Schedule and Method**.  Cobra shall pay to MasTec the First Installment, by wire transfer, no later than 5:00 p.m., Eastern Daylight Time ("EDT"), on August 2, 2021. Cobra shall pay to MasTec the Second Installment, and any interest thereon, by wire transfer, no later than 5:00 p.m., EDT, on August 1, 2022.  Cobra shall pay to MasTec the Third Installment, and any interest thereon, by wire transfer, no later than 5:00 p.m. Eastern Standard Time, on December 1, 2022.  All payments shall be routed through MasTec's counsel, Kozyak Tropin & Throckmorton LLP, with the following wire instructions:

2

Iberiabank
2109 Ponce De Leon Blvd
Coral Gables, FL  33134
Office: 305-442-9991
Fax: 305-448-7872

ABA No. 265270413
Kozyak Tropin Throckmorton LLP Trust Account
Account No. 5000003621

Any changes to the wiring instructions shall be provided as identified in Paragraph 24(j) of this agreement, *infra*.

3.　　**Interest**.  The Settlement Payment shall accrue simple interest at a rate of: (i) 6.0% per annum between August 3, 2021 and January 31, 2022; (ii) 9.0% per annum between February 1, 2022 and July 31, 2022; and 12.0% per annum after July 31, 2022.  Interest shall accrue solely on the unpaid principal of the Settlement Payment, and no interest shall be added to the principal, including for purposes of calculating the amount of interest accrued.  Cobra shall pay the interest accrued on the Second Installment at the time payment of the Second Installment is due.  Cobra shall pay the interest accrued on the Third Installment at the time payment of the Third Installment is due.

4.　　**Guarantee/Confession of Judgment**.   At the time the Parties execute this Settlement Agreement, and as a part of the consideration for the Settlement, Mammoth shall execute (i) a Guarantee of Cobra's obligations to pay the Settlement Payment and any interest thereon (the "Guarantee"), substantially in the form attached hereto as Exhibit A, and (ii) a Confession of Judgment, substantially in the form attached hereto as Exhibit B, for the Settlement Payment and any interest thereon.  MasTec shall have the right to enforce the Guarantee and Confession of Judgment as against Mammoth beginning no earlier than December 2, 2022, except

3

in the event of a filing of a bankruptcy by Mammoth, at which point MasTec shall have the right to immediately enforce the Confession of Judgment executed by Mammoth.

5.      Cobra shall also execute a Confession of Judgment at the time the Parties execute this Settlement Agreement, as part of the consideration for the Settlement, substantially in the form attached hereto as Exhibit C, for the Settlement Payment and any interest thereon. MasTec shall have the right to enforce the Confession of Judgment as against Cobra beginning no earlier than December 2, 2022, except in the event of a filing of a bankruptcy by Cobra, at which point MasTec shall have the right to immediately enforce the Confession of Judgment executed by Cobra.

6.      The Confession of Judgment executed by Mammoth and by Cobra shall be held in escrow by an escrow agent to be mutually agreed upon by the parties in good faith.

7.      **Acceleration**. The parties acknowledge that Cobra currently seeks, through proceedings in the Bankruptcy Court for the United States District Court for the District of Puerto Rico ("D.P.R. Bankruptcy Court"), to recover approximately $300 million from the Puerto Rico Electric Power Authority ("PREPA") for unpaid invoices, and interest earned thereon, in connection with work that Cobra performed under its contracts with PREPA in Puerto Rico (the "PREPA Receivable"). If Cobra recovers, from PREPA, either through the D.P.R. Bankruptcy Court, through an out-of-court proceeding or settlement, or otherwise, at least $100 million of the PREPA Receivable, then Cobra shall pay to MasTec any amounts outstanding of the Settlement Payment and any interest thereon within 10 days of Cobra's receipt of the $100 million or more of the PREPA Receivable.

8.      **Voluntary Dismissal of the Action**. Within two (2) business days of Cobra's payment of the First Installment, Cobra and MasTec shall execute, and MasTec shall file, a stipulation of dismissal, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), dismissing

the Action with prejudice, substantially in the form attached as Exhibit D hereto. The Parties further agree that, pursuant to the Court's July 15, 2021 Order Administratively Closing Case upon Notice of Settlement, that the Stipulation of Dismissal shall include the statement: "The effectiveness of this stipulation of dismissal is conditioned upon the Court's entry of an order retaining jurisdiction to enforce the terms of the parties' settlement agreement." The Parties further agree and acknowledge that the Court's retention of jurisdiction will be solely to enforce the terms of this Settlement Agreement and the Guaranty, including the enforcement of any judgment obtained in connection with the Settlement Agreement or Guaranty.

9. **MasTec Parties' Release of Claims Against Mammoth Parties**. On the day on which the complete Settlement Payment, and any interest accrued thereon pursuant to Paragraph 3, is paid to MasTec pursuant to Paragraph 2, MasTec and MasTec, Inc., for and on behalf of themselves and their past, present, and future direct or indirect parents, subsidiaries, corporate or other affiliates, predecessors, successors in interest, assigns, officers, directors, employees, partners, members, principals, attorneys, agents, representatives, shareholders, and the predecessors and successors in interest of all of the foregoing (collectively, the "MasTec Parties"), for and in consideration of the Settlement Payment and the execution and delivery of this Settlement Agreement, shall fully, finally and forever (i) release, waive, and discharge Cobra, Mammoth, and each of their past, present, and future direct and indirect parents, subsidiaries, corporate and other affiliates, predecessors, successors in interest, assigns, officers, directors, employees, agents, partners, members, principals, attorneys, agents, representatives, shareholders, and the predecessors and successors in interest of all of the foregoing, (collectively, the "Mammoth Parties"), from any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, cross claims, damages, or judgments whatsoever, and liabilities of any and every nature, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise, from the beginning of time through the date of this Agreement based on, arising out of, or in any way relating to (A) the allegations in the Complaint filed in the Action on January 21, 2020; (B) the allegations in the Indictment issued in the criminal matter styled *United States of America v. Tribble*, Crim. No. 19-541 (FAB) (D. P.R. Sep. 3, 2019); (C) all causes of action or claims that were or could have been brought or alleged in the Complaint, or during the course of the Action in any amended complaint, and (D) any and all facts and circumstances arising from or related to the foregoing (the "Released Claims"), and (ii) shall be, with respect to each of the Mammoth Parties, enjoined from: (A) asserting, advancing, prosecuting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind; (B) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance (each of (A), (B), and (C), an "Enjoined Action") based on any Released Claim; *provided*, *however*, that MasTec maintains the right to enforce the terms of this Settlement Agreement.

10.     **Mammoth Parties' Release of Claims Against MasTec Parties**.  Upon the filing of the stipulation of dismissal, described in Paragraph 8 above, the Mammoth Parties, for and in consideration of, dismissal of the Action and the execution and delivery of this Agreement, hereby

fully, finally and forever (I) release, waive, and discharge the MasTec Parties from any and all Released Claims (as defined in Paragraph 9), and (II) shall be, with respect to each of the MasTec Parties, enjoined from taking or pursuing any Enjoined Action (as defined in Paragraph 9) based on any such Released Claim; *provided*, *however*, that Cobra maintains the right to enforce the terms of this Settlement Agreement.

11.     **Releases Are Full, Final and Complete**.  The Parties all acknowledge that they intend the releases set forth in Paragraphs 9 and 10 shall be effective as full and final releases of, and as bars with prejudice to, each and every Released Claim as set forth therein that (a) the MasTec Parties had, have, or may later have against the Mammoth Parties, and (b) the Mammoth Parties had, have, or may later have against the MasTec Parties.  In connection with such waiver and relinquishment the Parties acknowledge that, if any of them or their attorneys hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this Settlement Agreement, this Settlement Agreement shall remain in full force and effect and that the Parties all hereby fully, finally, absolutely, and forever release any and all Released Claims released pursuant to Paragraphs 9 and 10 that now do exist, may exist, or heretofore have existed between them, and that in furtherance of such intentions, the releases shall be and remain in effect as full, final and complete releases of the Released Claims, notwithstanding the discovery of any such different or additional facts.  The Parties all expressly assume the risk of the facts turning out to be different, and agree that this Agreement will be in all respects effective and not subject to termination or rescission by reason of any such differences. If a MasTec Party at any time and for whatever reason attempts to assert a Released Claim, the MasTec Parties must, as a condition precedent to asserting any Released Claim, return to the Mammoth Parties all funds paid under this Settlement Agreement.

12.    **Unknown Claims Released**. The Parties expressly acknowledge and agree that the releases, discharges, and waivers included in Paragraphs 9 and 10 of this Settlement Agreement shall extend to Claims that the Parties do not know or suspect to exist, which, if known, might have affected the Parties' decisions to enter into the releases; that the Parties shall be deemed to relinquish, to the extent applicable, and to the full extent permitted by law, the provisions, rights, and benefits conferred by or under Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;**

and that the Parties shall be deemed to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542.  The Parties acknowledge that the foregoing waiver was separately bargained for and is a material term of this Settlement Agreement.

13.    **No Admissions**.  This Settlement Agreement constitutes a compromise of the Parties' disputes.  Nothing contained herein shall constitute or be deemed to be an admission or concession by the Parties as to any matter, including, without limitation, the truth of any fact alleged by the Parties, or the validity of any claim or cause of action that has been or could be asserted in any litigation involving the Mammoth Parties or MasTec Parties.  This Settlement Agreement, and the negotiation thereof, shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in the claims or defenses of any Party, with regard to any of the complaints, claims, allegations or defenses asserted or that could have been asserted in connection with the Action or the disputes described herein or settled or released hereby.  All pre-existing

drafts of this Agreement and all communications among counsel for MasTec and Cobra regarding this Settlement Agreement and the exhibits hereto constitute settlement discussions pursuant to Federal Rule of Evidence 408 and any other applicable similar federal or state statutes or rules. The Parties agree and understand that the facts and terms of this Settlement Agreement, including all negotiations, discussions, drafts, and proceedings in connection with this Settlement, and any act performed or document signed in connection with this Settlement Agreement, shall not, in any court, administrative agency, arbitration forum, or other tribunal, constitute an admission, evidence, or be deemed to create any inference (i) of any acts of wrongdoing or lack of wrongdoing; (ii) of any liability or breach on the part of any Party; (iii) of any deficiency of any claim or defense that has or could have been asserted in connection with the Action; (iv) of any damages, or lack of damages, suffered by any Party; or (v) that this Settlement Agreement represents an outcome that could or would have resulted if this Settlement Agreement were not executed at this point in time.

14.     **Confidentiality**. The Parties understand and agree that the terms of this Settlement Agreement, and the negotiations surrounding the Settlement Agreement, are confidential, and agree they shall not disclose, and that the Parties will cause the Mammoth Parties and MasTec Parties, respectively, not to disclose, the terms of the Settlement Agreement and the negotiations surrounding the Settlement Agreement, to any entity or person, for any reason, at any time, without the prior written consent of the other Parties, unless required by law, order, decree, rule or regulation, or legal, judicial or administrative process, of any governmental authority or self-regulatory organization.  In addition, disclosure may be made without violating the provisions of this Agreement only as necessary: (i) to comply with a court order, subpoena for testimony or documents, or other official service of process, provided, however, that (A) in the event that the

fact or terms of this Settlement Agreement are requested, by subpoena or otherwise, in any legal proceeding, the person receiving such request (the "Receiving Party") shall provide prompt notice to the other Parties, to the extent practicable or legally permissible, to allow them a reasonable opportunity to assert any objections or prepare and file motions concerning such request; and (B) the Receiving Party requests that any disclosure pursuant to court order be made only under a protective order limiting its use or disclosure to the narrowest extent permissible, and requests that all judicial or other filings or proceedings referencing such information be placed or conducted under seal or in a closed courtroom; (ii) to attorneys, accountants, auditors, lenders, insurers, reinsurers, and government agencies as reasonably necessary in order for the disclosing person to conduct its business or affairs, with a request that such information be maintained as strictly confidential by such recipient(s); (iii) where a disclosing entity determines in good faith that the Party is required to disclose publicly the terms of this Settlement Agreement in connection with its financial and/or public company reporting obligations; (iv) by the Mammoth Parties, to representatives or counsel of the Puerto Rico Electric Power Authority ("PREPA"), in connection with efforts to recover from PREPA amounts owed to Cobra; or (v) to enforce this Settlement Agreement.  Notwithstanding any provisions of this Paragraph 14 to the contrary, the Parties may disclose the terms of this Settlement Agreement in, and file the Settlement Agreement itself with, its filings with the Securities and Exchange Commission if a Party determines in good faith that it is required to do so.

15.     **Public Statements**.  Except as permitted by Paragraph 14 above, neither the Mammoth Parties nor the MasTec Parties shall issue any statement, press release, or other public communication concerning the Action, this Settlement Agreement, or this Settlement.  In the event that a Mammoth Party or MasTec Party or its attorney receives any inquiry about the Action or

any controversy resolved by this Settlement Agreement, or about the terms or existence of this Settlement Agreement, the response shall be that the person or entity has no comment.

16.   **Litigation Fees and Expenses**.  MasTec, Cobra, and Mammoth shall bear their own fees, costs, and expenses associated with the Action, including attorneys', expert, and accounting fees.

17.   **Governing Law**.  This Agreement, and any dispute arising out of or relating in any way to this Agreement, whether in contract, tort, or otherwise, shall be governed by and construed in accordance with the laws of the State of Florida without regard to conflict of laws principles.

18.   **Jurisdiction**.  All of the Parties agree that any suit, action, or proceeding arising out of or relating to this Agreement ("Related Proceeding"), or to the Confessions of Judgment, shall be brought, heard, and determined exclusively in a federal court of competent jurisdiction sitting in the Southern District of Florida, and the Parties agree to submit to the personal jurisdiction of any such court for any Related Proceeding.  All of the Parties further waive any defense relating to forum or venue, including but not limited to *forum non conveniens* or that a Related Proceeding should be transferred pursuant to 28 U.S.C § 1404(a).  All of the Parties further consent and agree that process in any Related Proceeding may be served on any Party by overnight delivery (*e.g.*, Federal Express) and electronic mail, addressed to the counsel for such Party identified in Paragraph 24(j).

19.   **Construction**.  This Settlement Agreement shall be construed in all respects as jointly drafted and shall not be construed, in any way, against any Party on the ground that the Party or its counsel drafted this Agreement; it being recognized that this Agreement is the result of arm's-length negotiations between the Parties, all of whom were represented by counsel, and all Parties have contributed substantially and materially to the preparation of this Agreement.

20.     **Entire Agreement**.  This Agreement, together with the Exhibits, constitutes the entire agreement among the Parties with respect to the subject matter hereof, and supersedes all written or oral communications, agreements, or understandings that may have existed prior to the execution of this Agreement.  No representations, warranties, or statements of any nature whatsoever, whether written or oral, have been made to or relied upon by any Party concerning this Agreement or its Exhibits, other than the representations, warranties, and covenants expressly set forth in such documents.  This Agreement may not be amended nor any of its provisions waived except by a writing signed by MasTec, MasTec Inc., Mammoth, and Cobra, or their respective successors in interest.

21.     **Execution in Counterparts**.  This Agreement may be executed in any number of actual or copied counterparts and by each of the different Parties on several counterparts, each of which when so executed and delivered will be an original.  The executed signature page(s) from each actual or copied counterpart may be joined together and attached and will constitute one and the same instrument.  Delivery of an executed counterpart signature page by facsimile or electronic mail is as effective as executing and delivering this Agreement in the presence of all other Parties.

22.     **Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective agents, successors, executors, heirs, and assigns.

23.     **Authority**.  Each of the undersigned affirms that he or she is duly empowered and authorized to enter into this Settlement Agreement on behalf of the listed entity for which such person has signed this Settlement Agreement.  This Settlement Agreement has been duly and validly executed by each Party, and constitutes a legal, valid, and binding contract, enforceable against such party in accordance with its terms but subject to the conditions set forth in this Settlement Agreement. Each Party is acting freely and voluntarily in executing and delivering this

Settlement Agreement, has not acted under coercion or duress, and understands the effects of this Settlement Agreement.

24.     **Miscellaneous Provisions**.

a.      Any Exhibit referred to herein shall be incorporated by reference as though fully set forth herein.

b.      The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

c.      The Parties expressly represent and warrant that no court approval of this Settlement Agreement or entry of any court order approving the Settlement embodied herein is necessary for this Settlement Agreement to be binding upon the Parties.

d.      Each Party represents that it has not transferred, assigned or granted, or purported to assign, transfer or grant, any of the claims, demands, rights or causes of action released by this Settlement Agreement.

e.      The waiver by a Party of any breach of this Settlement Agreement by the other Party shall not be deemed a waiver of any other prior or subsequent breach of any provision of this Settlement Agreement by any other Party.

f.      If any term, provision, covenant, or restriction of this Settlement Agreement is held by a court of competent jurisdiction or other governmental authority to be invalid, void, or unenforceable, the remainder of the terms, provisions, covenants, and restrictions of this Settlement Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated so long as the economic or legal substance of the Settlement is not affected in any manner materially adverse to any Party.  Upon such determination, the Parties shall negotiate in good faith to modify this Settlement Agreement so as to effect the original intent of

the parties as closely as possible in an acceptable manner in order that the Settlement be consummated as originally contemplated to the fullest extent possible.

       g.     Each Party agrees to take all such actions and execute such agreements as any other Party may reasonably request to effectuate the intent and purposes of, and to carry out the terms of, this Settlement Agreement.

       h.     Each of the Parties acknowledges and agrees that it has obtained the advice of counsel before entering into this Settlement Agreement and is not relying upon any other Party concerning this Settlement Agreement or any aspect of the transactions contemplated herein.  No Party is relying upon any statement, advice, counsel, disclosure, or representations of any other Party or such other Party's counsel other than as expressly set forth in this Settlement Agreement.

       i.     The terms and conditions of the Settlement, as reflected in this Agreement, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties who have executed this Settlement Agreement.

       j.     Any notice required by this Settlement Agreement or otherwise given shall be in writing addressed to each Party to this Agreement as follows:

      If to MasTec and MasTec, Inc.:

      Benjamin Widlanski, Esq.
      Jorge Piedra, Esq.
      **KOZYAK TROPIN &**
      **THROCKMORTON LLP**
      2525 Ponce de Leon Boulevard, 9th Floor
      Coral Gables, Florida 33134
      Telephone: (305) 372-1800
      bwidlanski@kttlaw.com
      jpiedra@kttlaw.com

If to Mammoth and Cobra:

Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com

Harry A. Olivar, Jr.
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
harryolivar@quinnemanuel.com

Notices shall be delivered by overnight courier and by electronic mail.  The Parties may change the foregoing notice addresses by written notice to the other Parties in accordance with the terms of this Paragraph 24(j).

**IN WITNESS WHEREOF,** the Parties have executed this Settlement Agreement effective as of the date set forth above.

**[SIGNATURE PAGE FOLLOWS]**

DATED: August 2, 2021  **MASTEC RENEWABLES PUERTO RICO, LLC**

By:  /s/ _____
By:  Robert Apple
Title: President

DATED: August 2, 2021  **MASTEC, INC.**

/s/ _____
By: Robert Apple
Title:  Chief Operating Officer

DATED: August 2, 2021  **COBRA ACQUISITIONS, LLC**

/s/ _____
By:  Arthur W. Straehla II
Title: CEO

DATED: August 2, 2021  **MAMMOTH ENERGY SERVICES, INC.**

/s/ _____
By:  Arthur W. Straehla II
Title:  CEO

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"), dated August 2, 2021 (the "Effective Date"), is entered into by and among the following parties (each a "Party" and collectively, the "Parties"): (a) Plaintiff MasTec Renewables Puerto Rico, LLC ("MasTec"), Plaintiff in the action styled *MasTec Renewables Puerto Rico, LLC v. Mammoth Energy Services, Inc., et al.*, No. 1:20-cv-20263 (S.D. Fla.) (the "Action"); (b) MasTec, Inc.; (c) Defendant Cobra Acquisitions, LLC ("Cobra"); and (d) Mammoth Energy Services, Inc. ("Mammoth").

This Agreement states all of the terms of the Parties' agreement, which is intended by the Parties to fully, finally, and forever compromise, settle, resolve, and dismiss with prejudice the Action and any disputes that may exist between or among the Parties.

## RECITALS

WHEREAS, MasTec commenced this Action against Cobra and Mammoth on January 21, 2020;

WHEREAS, the Parties have engaged in good faith, arm's length settlement negotiations in an effort to resolve any and all remaining disputes between them, resulting in the settlement that is set forth in this Settlement Agreement;

WHEREAS, without conceding the merits of any claim or argument asserted by either Party, the Parties have negotiated and entered into this Agreement in order to avoid the risk, delay, and substantial expense that would arise from litigation of the Action to final resolution;

WHEREAS, to avoid any further expenditure of time, effort, money, and the inconvenience and inherent risk the Parties incur in prosecuting and defending the Action, the Parties desire fully and finally to compromise, settle, and resolve the Action and provide releases upon the terms and conditions set forth herein (the "Settlement").

## **AGREEMENT**

NOW, THEREFORE, the Parties hereby agree as follows:

1.      **Settlement Consideration**.  As consideration for the full and complete releases described in Paragraphs 9 and 10, for dismissal of the Action with prejudice, and for the execution and delivery of this Settlement Agreement, Cobra shall pay to MasTec the total sum of $25,000,000.00 (25 million dollars and zero cents).  Payment shall be made in three installments. The first installment shall be $6,500,000.00 (six-million, five-hundred thousand dollars and zero cents) (the "First Installment"); the second installment shall be $9,250,000.00 (nine-million, two-hundred fifty-thousand dollars and zero cents) (the "Second Installment"); and the third installment shall be $9,250,000.00 (nine-million, two-hundred fifty-thousand dollars and zero cents) (the "Third Installment").  The First, Second, and Third Installments constitute the total "Settlement Payment."

2.      **Payment Schedule and Method**.  Cobra shall pay to MasTec the First Installment, by wire transfer, no later than 5:00 p.m., Eastern Daylight Time ("EDT"), on August 2, 2021. Cobra shall pay to MasTec the Second Installment, and any interest thereon, by wire transfer, no later than 5:00 p.m., EDT, on August 1, 2022.  Cobra shall pay to MasTec the Third Installment, and any interest thereon, by wire transfer, no later than 5:00 p.m. Eastern Standard Time, on December 1, 2022.  All payments shall be routed through MasTec's counsel, Kozyak Tropin & Throckmorton LLP, with the following wire instructions:

Iberiabank
2109 Ponce De Leon Blvd
Coral Gables, FL  33134
Office: 305-442-9991
Fax: 305-448-7872

ABA No. 265270413
Kozyak Tropin Throckmorton LLP Trust Account
Account No. 5000003621

Any changes to the wiring instructions shall be provided as identified in Paragraph 24(j) of this agreement, *infra*.

3.      **Interest**.  The Settlement Payment shall accrue simple interest at a rate of: (i) 6.0% per annum between August 3, 2021 and January 31, 2022; (ii) 9.0% per annum between February 1, 2022 and July 31, 2022; and 12.0% per annum after July 31, 2022.  Interest shall accrue solely on the unpaid principal of the Settlement Payment, and no interest shall be added to the principal, including for purposes of calculating the amount of interest accrued.  Cobra shall pay the interest accrued on the Second Installment at the time payment of the Second Installment is due.  Cobra shall pay the interest accrued on the Third Installment at the time payment of the Third Installment is due.

4.      **Guarantee/Confession of Judgment**.   At the time the Parties execute this Settlement Agreement, and as a part of the consideration for the Settlement, Mammoth shall execute (i) a Guarantee of Cobra's obligations to pay the Settlement Payment and any interest thereon (the "Guarantee"), substantially in the form attached hereto as Exhibit A, and (ii) a Confession of Judgment, substantially in the form attached hereto as Exhibit B, for the Settlement Payment and any interest thereon.  MasTec shall have the right to enforce the Guarantee and Confession of Judgment as against Mammoth beginning no earlier than December 2, 2022, except

in the event of a filing of a bankruptcy by Mammoth, at which point MasTec shall have the right to immediately enforce the Confession of Judgment executed by Mammoth.

5.      Cobra shall also execute a Confession of Judgment at the time the Parties execute this Settlement Agreement, as part of the consideration for the Settlement, substantially in the form attached hereto as Exhibit C, for the Settlement Payment and any interest thereon.  MasTec shall have the right to enforce the Confession of Judgment as against Cobra beginning no earlier than December 2, 2022, except in the event of a filing of a bankruptcy by Cobra, at which point MasTec shall have the right to immediately enforce the Confession of Judgment executed by Cobra.

6.      The Confession of Judgment executed by Mammoth and by Cobra shall be held in escrow by an escrow agent to be mutually agreed upon by the parties in good faith.

7.      **Acceleration**.   The parties acknowledge that Cobra currently seeks, through proceedings in the Bankruptcy Court for the United States District Court for the District of Puerto Rico ("D.P.R. Bankruptcy Court"), to recover approximately $300 million from the Puerto Rico Electric Power Authority ("PREPA") for unpaid invoices, and interest earned thereon, in connection with work that Cobra performed under its contracts with PREPA in Puerto Rico (the "PREPA Receivable").  If Cobra recovers, from PREPA, either through the D.P.R. Bankruptcy Court, through an out-of-court proceeding or settlement, or otherwise, at least $100 million of the PREPA Receivable, then Cobra shall pay to MasTec any amounts outstanding of the Settlement Payment and any interest thereon within 10 days of Cobra's receipt of the $100 million or more of the PREPA Receivable.

8.      **Voluntary Dismissal of the Action**. Within two (2) business days of Cobra's payment of the First Installment, Cobra and MasTec shall execute, and MasTec shall file, a stipulation of dismissal, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), dismissing

the Action with prejudice, substantially in the form attached as Exhibit D hereto.  The Parties

further agree that, pursuant to the Court's July 15, 2021 Order Administratively Closing Case upon

Notice of Settlement, that the Stipulation of Dismissal shall include the statement: "The

effectiveness of this stipulation of dismissal is conditioned upon the Court's entry of an order

retaining jurisdiction to enforce the terms of the parties' settlement agreement." The Parties further

agree and acknowledge that the Court's retention of jurisdiction will be solely to enforce the terms

of this Settlement Agreement and the Guaranty, including the enforcement of any judgment

obtained in connection with the Settlement Agreement or Guaranty.

9.      **MasTec Parties' Release of Claims Against Mammoth Parties**.  On the day on

which the complete Settlement Payment, and any interest accrued thereon pursuant to Paragraph

3, is paid to MasTec pursuant to Paragraph 2, MasTec and MasTec, Inc., for and on behalf of

themselves and their past, present, and future direct or indirect parents, subsidiaries, corporate or

other affiliates, predecessors, successors in interest, assigns, officers, directors, employees,

partners, members, principals, attorneys, agents, representatives, shareholders, and the

predecessors and successors in interest of all of the foregoing (collectively, the "MasTec Parties"),

for and in consideration of the Settlement Payment and the execution and delivery of this

Settlement Agreement, shall fully, finally and forever (i) release, waive, and discharge Cobra,

Mammoth, and each of their past, present, and future direct and indirect parents, subsidiaries,

corporate and other affiliates, predecessors, successors in interest, assigns, officers, directors,

employees, agents, partners, members, principals, attorneys, agents, representatives, shareholders,

and the predecessors and successors in interest of all of the foregoing, (collectively, the "Mammoth

Parties"), from any and all claims, rights, actions, causes of action, liabilities, obligations, suits,

debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, cross claims, damages, or judgments whatsoever, and liabilities of any and every nature, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise, from the beginning of time through the date of this Agreement based on, arising out of, or in any way relating to (A) the allegations in the Complaint filed in the Action on January 21, 2020; (B) the allegations in the Indictment issued in the criminal matter styled *United States of America v. Tribble*, Crim. No. 19-541 (FAB) (D. P.R. Sep. 3, 2019); (C) all causes of action or claims that were or could have been brought or alleged in the Complaint, or during the course of the Action in any amended complaint, and (D) any and all facts and circumstances arising from or related to the foregoing (the "Released Claims"), and (ii) shall be, with respect to each of the Mammoth Parties, enjoined from: (A) asserting, advancing, prosecuting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind; (B) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance (each of (A), (B), and (C), an "Enjoined Action") based on any Released Claim; *provided, however*, that MasTec maintains the right to enforce the terms of this Settlement Agreement.

10.     **Mammoth Parties' Release of Claims Against MasTec Parties**.  Upon the filing of the stipulation of dismissal, described in Paragraph 8 above, the Mammoth Parties, for and in consideration of, dismissal of the Action and the execution and delivery of this Agreement, hereby

fully, finally and forever (I) release, waive, and discharge the MasTec Parties from any and all Released Claims (as defined in Paragraph 9), and (II) shall be, with respect to each of the MasTec Parties, enjoined from taking or pursuing any Enjoined Action (as defined in Paragraph 9) based on any such Released Claim; *provided, however*, that Cobra maintains the right to enforce the terms of this Settlement Agreement.

11.     **Releases Are Full, Final and Complete**.  The Parties all acknowledge that they intend the releases set forth in Paragraphs 9 and 10 shall be effective as full and final releases of, and as bars with prejudice to, each and every Released Claim as set forth therein that (a) the MasTec Parties had, have, or may later have against the Mammoth Parties, and (b) the Mammoth Parties had, have, or may later have against the MasTec Parties.  In connection with such waiver and relinquishment the Parties acknowledge that, if any of them or their attorneys hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this Settlement Agreement, this Settlement Agreement shall remain in full force and effect and that the Parties all hereby fully, finally, absolutely, and forever release any and all Released Claims released pursuant to Paragraphs 9 and 10 that now do exist, may exist, or heretofore have existed between them, and that in furtherance of such intentions, the releases shall be and remain in effect as full, final and complete releases of the Released Claims, notwithstanding the discovery of any such different or additional facts.  The Parties all expressly assume the risk of the facts turning out to be different, and agree that this Agreement will be in all respects effective and not subject to termination or rescission by reason of any such differences. If a MasTec Party at any time and for whatever reason attempts to assert a Released Claim, the MasTec Parties must, as a condition precedent to asserting any Released Claim, return to the Mammoth Parties all funds paid under this Settlement Agreement.

12.     **Unknown Claims Released**. The Parties expressly acknowledge and agree that the releases, discharges, and waivers included in Paragraphs 9 and 10 of this Settlement Agreement shall extend to Claims that the Parties do not know or suspect to exist, which, if known, might have affected the Parties' decisions to enter into the releases; that the Parties shall be deemed to relinquish, to the extent applicable, and to the full extent permitted by law, the provisions, rights, and benefits conferred by or under Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;**

and that the Parties shall be deemed to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law, which is similar, comparable or equivalent to California Civil Code Section 1542. The Parties acknowledge that the foregoing waiver was separately bargained for and is a material term of this Settlement Agreement.

13.     **No Admissions**.   This Settlement Agreement constitutes a compromise of the Parties' disputes.  Nothing contained herein shall constitute or be deemed to be an admission or concession by the Parties as to any matter, including, without limitation, the truth of any fact alleged by the Parties, or the validity of any claim or cause of action that has been or could be asserted in any litigation involving the Mammoth Parties or MasTec Parties.  This Settlement Agreement, and the negotiation thereof, shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in the claims or defenses of any Party, with regard to any of the complaints, claims, allegations or defenses asserted or that could have been asserted in connection with the Action or the disputes described herein or settled or released hereby.  All pre-existing

drafts of this Agreement and all communications among counsel for MasTec and Cobra regarding this Settlement Agreement and the exhibits hereto constitute settlement discussions pursuant to Federal Rule of Evidence 408 and any other applicable similar federal or state statutes or rules. The Parties agree and understand that the facts and terms of this Settlement Agreement, including all negotiations, discussions, drafts, and proceedings in connection with this Settlement, and any act performed or document signed in connection with this Settlement Agreement, shall not, in any court, administrative agency, arbitration forum, or other tribunal, constitute an admission, evidence, or be deemed to create any inference (i) of any acts of wrongdoing or lack of wrongdoing; (ii) of any liability or breach on the part of any Party; (iii) of any deficiency of any claim or defense that has or could have been asserted in connection with the Action; (iv) of any damages, or lack of damages, suffered by any Party; or (v) that this Settlement Agreement represents an outcome that could or would have resulted if this Settlement Agreement were not executed at this point in time.

14.     **Confidentiality**. The Parties understand and agree that the terms of this Settlement Agreement, and the negotiations surrounding the Settlement Agreement, are confidential, and agree they shall not disclose, and that the Parties will cause the Mammoth Parties and MasTec Parties, respectively, not to disclose, the terms of the Settlement Agreement and the negotiations surrounding the Settlement Agreement, to any entity or person, for any reason, at any time, without the prior written consent of the other Parties, unless required by law, order, decree, rule or regulation, or legal, judicial or administrative process, of any governmental authority or self-regulatory organization. In addition, disclosure may be made without violating the provisions of this Agreement only as necessary: (i) to comply with a court order, subpoena for testimony or documents, or other official service of process, provided, however, that (A) in the event that the

fact or terms of this Settlement Agreement are requested, by subpoena or otherwise, in any legal proceeding, the person receiving such request (the "Receiving Party") shall provide prompt notice to the other Parties, to the extent practicable or legally permissible, to allow them a reasonable opportunity to assert any objections or prepare and file motions concerning such request; and (B) the Receiving Party requests that any disclosure pursuant to court order be made only under a protective order limiting its use or disclosure to the narrowest extent permissible, and requests that all judicial or other filings or proceedings referencing such information be placed or conducted under seal or in a closed courtroom; (ii) to attorneys, accountants, auditors, lenders, insurers, reinsurers, and government agencies as reasonably necessary in order for the disclosing person to conduct its business or affairs, with a request that such information be maintained as strictly confidential by such recipient(s); (iii) where a disclosing entity determines in good faith that the Party is required to disclose publicly the terms of this Settlement Agreement in connection with its financial and/or public company reporting obligations; (iv) by the Mammoth Parties, to representatives or counsel of the Puerto Rico Electric Power Authority ("PREPA"), in connection with efforts to recover from PREPA amounts owed to Cobra; or (v) to enforce this Settlement Agreement.  Notwithstanding any provisions of this Paragraph 14 to the contrary, the Parties may disclose the terms of this Settlement Agreement in, and file the Settlement Agreement itself with, its filings with the Securities and Exchange Commission if a Party determines in good faith that it is required to do so.

15.     **Public Statements**.  Except as permitted by Paragraph 14 above, neither the Mammoth Parties nor the MasTec Parties shall issue any statement, press release, or other public communication concerning the Action, this Settlement Agreement, or this Settlement.  In the event that a Mammoth Party or MasTec Party or its attorney receives any inquiry about the Action or

any controversy resolved by this Settlement Agreement, or about the terms or existence of this Settlement Agreement, the response shall be that the person or entity has no comment.

16.     **Litigation Fees and Expenses**.  MasTec, Cobra, and Mammoth shall bear their own fees, costs, and expenses associated with the Action, including attorneys', expert, and accounting fees.

17.     **Governing Law**.  This Agreement, and any dispute arising out of or relating in any way to this Agreement, whether in contract, tort, or otherwise, shall be governed by and construed in accordance with the laws of the State of Florida without regard to conflict of laws principles.

18.     **Jurisdiction**.  All of the Parties agree that any suit, action, or proceeding arising out of or relating to this Agreement ("Related Proceeding"), or to the Confessions of Judgment, shall be brought, heard, and determined exclusively in a federal court of competent jurisdiction sitting in the Southern District of Florida, and the Parties agree to submit to the personal jurisdiction of any such court for any Related Proceeding.  All of the Parties further waive any defense relating to forum or venue, including but not limited to *forum non conveniens* or that a Related Proceeding should be transferred pursuant to 28 U.S.C § 1404(a).  All of the Parties further consent and agree that process in any Related Proceeding may be served on any Party by overnight delivery (*e.g.*, Federal Express) and electronic mail, addressed to the counsel for such Party identified in Paragraph 24(j).

19.     **Construction**.  This Settlement Agreement shall be construed in all respects as jointly drafted and shall not be construed, in any way, against any Party on the ground that the Party or its counsel drafted this Agreement; it being recognized that this Agreement is the result of arm's-length negotiations between the Parties, all of whom were represented by counsel, and all Parties have contributed substantially and materially to the preparation of this Agreement.

20. **Entire Agreement**.  This Agreement, together with the Exhibits, constitutes the entire agreement among the Parties with respect to the subject matter hereof, and supersedes all written or oral communications, agreements, or understandings that may have existed prior to the execution of this Agreement.  No representations, warranties, or statements of any nature whatsoever, whether written or oral, have been made to or relied upon by any Party concerning this Agreement or its Exhibits, other than the representations, warranties, and covenants expressly set forth in such documents.  This Agreement may not be amended nor any of its provisions waived except by a writing signed by MasTec, MasTec Inc., Mammoth, and Cobra, or their respective successors in interest.

21. **Execution in Counterparts**.  This Agreement may be executed in any number of actual or copied counterparts and by each of the different Parties on several counterparts, each of which when so executed and delivered will be an original.  The executed signature page(s) from each actual or copied counterpart may be joined together and attached and will constitute one and the same instrument.  Delivery of an executed counterpart signature page by facsimile or electronic mail is as effective as executing and delivering this Agreement in the presence of all other Parties.

22. **Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective agents, successors, executors, heirs, and assigns.

23. **Authority**.  Each of the undersigned affirms that he or she is duly empowered and authorized to enter into this Settlement Agreement on behalf of the listed entity for which such person has signed this Settlement Agreement.  This Settlement Agreement has been duly and validly executed by each Party, and constitutes a legal, valid, and binding contract, enforceable against such party in accordance with its terms but subject to the conditions set forth in this Settlement Agreement. Each Party is acting freely and voluntarily in executing and delivering this

Settlement Agreement, has not acted under coercion or duress, and understands the effects of this Settlement Agreement.

24. **Miscellaneous Provisions**.

a. Any Exhibit referred to herein shall be incorporated by reference as though fully set forth herein.

b. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

c. The Parties expressly represent and warrant that no court approval of this Settlement Agreement or entry of any court order approving the Settlement embodied herein is necessary for this Settlement Agreement to be binding upon the Parties.

d. Each Party represents that it has not transferred, assigned or granted, or purported to assign, transfer or grant, any of the claims, demands, rights or causes of action released by this Settlement Agreement.

e. The waiver by a Party of any breach of this Settlement Agreement by the other Party shall not be deemed a waiver of any other prior or subsequent breach of any provision of this Settlement Agreement by any other Party.

f. If any term, provision, covenant, or restriction of this Settlement Agreement is held by a court of competent jurisdiction or other governmental authority to be invalid, void, or unenforceable, the remainder of the terms, provisions, covenants, and restrictions of this Settlement Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated so long as the economic or legal substance of the Settlement is not affected in any manner materially adverse to any Party. Upon such determination, the Parties shall negotiate in good faith to modify this Settlement Agreement so as to effect the original intent of

the parties as closely as possible in an acceptable manner in order that the Settlement be consummated as originally contemplated to the fullest extent possible.

g.     Each Party agrees to take all such actions and execute such agreements as any other Party may reasonably request to effectuate the intent and purposes of, and to carry out the terms of, this Settlement Agreement.

h.     Each of the Parties acknowledges and agrees that it has obtained the advice of counsel before entering into this Settlement Agreement and is not relying upon any other Party concerning this Settlement Agreement or any aspect of the transactions contemplated herein.  No Party is relying upon any statement, advice, counsel, disclosure, or representations of any other Party or such other Party's counsel other than as expressly set forth in this Settlement Agreement.

i.     The terms and conditions of the Settlement, as reflected in this Agreement, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties who have executed this Settlement Agreement.

j.     Any notice required by this Settlement Agreement or otherwise given shall be in writing addressed to each Party to this Agreement as follows:

If to MasTec and MasTec, Inc.:

Benjamin Widlanski, Esq.
Jorge Piedra, Esq.
**KOZYAK TROPIN &
THROCKMORTON LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
bwidlanski@kttlaw.com
jpiedra@kttlaw.com

If to Mammoth and Cobra:

Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com

Harry A. Olivar, Jr.
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
harryolivar@quinnemanuel.com

Notices shall be delivered by overnight courier and by electronic mail.  The Parties may change the foregoing notice addresses by written notice to the other Parties in accordance with the terms of this Paragraph 24(j).

**IN WITNESS WHEREOF,** the Parties have executed this Settlement Agreement effective as of the date set forth above.

**[SIGNATURE PAGE FOLLOWS]**

DATED: August 2, 2021

**MASTEC RENEWABLES PUERTO RICO, LLC**

By:   /s/ _____
      By:  Robert Apple
      Title: President

DATED: August 2, 2021

**MASTEC, INC.**

/s/ _____
    By: Robert Apple
    Title:  Chief Operating Officer

DATED: August 2, 2021

**COBRA ACQUISITIONS, LLC**

/s/ _Arthur W. Straehla II_____
    By:  Arthur W. Straehla II
    Title: CEO

DATED: August 2, 2021

**MAMMOTH ENERGY SERVICES, INC.**

/s/ _Arthur W. Straehla II_____
    By:  Arthur W. Straehla II
    Title:  CEO